O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>CESAR PULIDO-ESTRADA,<br><br>        Defendant.<br>_____ | Case No. CR 12-00032 DDP<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ORDER DISMISSING INDICTMENT**<br><br>[Dkt. No. 29 ] |

    Presently before the court is Defendant Cesar Pulido-Estrada's Motion for Order Dismissing Indictment Due to Invalidity of Prior Deportation Order and Violation of Defendant's Due Process Rights. Having considered the parties' submissions and heard oral argument, the court adopts the following order.

**I. BACKGROUND**

    Defendant is a native and citizen of Mexico. (Mot., Exh. B at 2.) According to his application for Legal Permanent Resident ("LPR") status, Defendant entered the United States without a visa on January 7, 1977. (Opp., Exh. 4.) At that time, he was around

///

four years old. (Opp., Exh. 4 (indicating that he was born in 1972). <u>See also</u> Mot at 19 n.11.) He was granted LPR status on April 19, 1989. (Mot., Exh. A.) On March 12, 1997, Defendant was arraigned for the crimes of grand theft auto in violation of California Penal Code Section 487(D), unlawful driving or taking of a vehicle in violation of California Vehicle Code Section 10851(a), and dissuading a witness by force or threat in violation of California Penal Code Section 136.1(c)(1). (Mot., Exh. D.) On May 14, 1997, Defendant was convicted by plea of all three counts. (Mot., Exhs. E and F.)

On June 25, 1997, the U.S. Immigration and Naturalization Service ("INS") issued a Notice to Appear which alleged that Defendant was an LPR who had been convicted "for the offense of Grand Theft Auto, in violation of Section 487(D) of the California Health and Safety Code" and for that offense was sentenced to confinement for three years. (Mot., Exh. A.) The Notice charged Defendant as removable for having been "convicted of an aggravated felony as defined in section 101(a)(43) of the Act." (<u>Id.</u>)

On April 23, 1999, a hearing was conducted before an Immigration Judge. (Mot., Exh. B.[1]) Defendant was asked if he understood his right to be represented by counsel and responded "Yes." (<u>Id.</u> 1:13-14.) When asked if he had counsel and if he wished for additional time to obtain counsel, Defendant responded "No." (<u>Id.</u> 1:15-18.) He also responded affirmatively when asked

---

[1]The government presented Defendant with what purports to be a true and correct audio recording of this hearing. Defendant prepared a transcript of the audio recording. (Mot. at 5, Exh. B.) The government compared the transcript to the audio recording and has deemed it to be accurate. (Opp. at 3 n.2.)

2

if he understood and had received written notice of his right to appeal. (Id. 1:23-26.)  The Immigration Judge then asked Defendant if he understood the charges against him.

> IJ: The charge in your case is you should be deported from the United States because at any time after admission, you've been convicted of an aggravated felony. An aggravated felony includes a theft offense for which the sentence is one year or more. Do you understand that charge?
> D: Yes.
> IJ: And the government says that they handed the charge to you on April 20. Did the government hand you a copy of the charge on April 20?
> D: Yes.
> IJ: And do you want to discuss your case today or a different date?
> D: Today.
> IJ: The government alleges that you are not a citizen or a national of the United States. They say you are a native or a citizen of Mexico. They adjusted your status to that of a permanent resident on April 19, 1989. They say that on May 14, 1997, you were convicted in Los Angeles of grand theft and sentenced for that offense to three years. Do you understand those allegations?
> D: Yes.
> IJ: Are you a citizen or a national of the United States?
> D: No.
> IJ: Are you a native and citizen of Mexico?
> D: Yes.
> IJ: Are either of your parents U.S. citizens?
> D: No.
> IJ: Were you admitted to the United States as a permanent resident on April 19, 1989?
> D: Right.
> Unidentified Voice: I'm sorry?
> D: Correct.
> IJ: Okay. And on May 14,1997, were you convicted of grand theft and sentenced to three years?
> D: Yes.
> IJ: If you were to be deported, to what country?
> D: Mexico.
> IJ: Will anybody try to hurt you in Mexico?
> D: No.
> IJ: Is there anything else you wish to present about your case?
> D: Umm, no.
> IJ: Nothing?
> D: Nothing. Nothing.
> IJ: Based on your admissions, I'm going to order you removed and deported to Mexico. I don't see any reliefs [sic] available. Do you accept the deportation or do you wish to appeal?

```
     D:   I'm accepting it.
     IJ:  Thank you sir.
     D:   That's it?
     IJ:  That's it.
```
(Mot., Exh. B. 2:3-3:19.)

The same day, Defendant was removed to Mexico. (Mot., Exh. C.)

The government asserts that Defendant returned to the United States at least twice after his deportation, on September 15, 2003, and on June 19, 2006. (Opp., Exhs. 1 and 2.)

The Grand Jury charges that Defendant was found in San Bernardino County on November 30, 2011, in violation of 8 U.S.C. § 1326(a) and (b)(1).

**II.   LEGAL STANDARD**

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004). To succeed, a defendant must demonstrate that 1) he exhausted all administrative remedies, 2) the underlying removal proceedings improperly deprived him of the opportunity for judicial review, and 3) the entry of the removal order was fundamentally unfair. Id. at 1048. Entry of an order is fundamentally unfair if it violated an alien's due process rights and the alien suffered prejudice as a result. Id.; see also United States v. Reyes-Bonilla, 671 F.3d 1036, 1042-43 (9th Cir. 2012).

///
///
///

**III. DISCUSSION**

   **A. Exhaustion of Administrative Remedies**

   A defendant is barred from collaterally attacking his prior deportation order if he validly waived the right to appeal that order. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). To be valid, a waiver of appeal must be "considered and intelligent." Id., quoting United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987). A waiver is not "considered and intelligent" if the "record contains an inference that the petitioner is eligible for relief from deportation" and the Immigration Judge failed to advise the petitioner of the possible relief. U.S. v. Arrieta, 224 F.3d at 1079.

   Here, Defendant waived his right to appeal, but the Immigration Judge told Defendant that he was not eligible for any relief from removal. (Mot., Exh. B 3:14.) The parties disagree on whether Defendant was in fact eligible for relief from removal. This depends on whether Defendant had committed an aggravated felony, which would make him ineligible for cancellation of removal and voluntary departure, and if he did commit an aggravated felony, whether he was still eligible for relief under § INA 212(h), 8 U.S.C. § 1182(h)(1)(B).

      **1. Whether the Immigration Judge Had Sufficient Evidence of a Conviction for an Aggravated Felony**

   According to the hearing transcript, the Immigration Judge appears to have based the finding that Defendant had been convicted of an aggravated felony on the Notice to Appear and on Defendant's admission that he had been convicted of "grand theft." Although other conviction documents were apparently in Defendant's

5

immigration file, the Immigration Judge does not refer to any of them in the hearing transcript. The Immigration Judge referred to the April 20 Notice to Appear and then recited its allegations. (Mot., Exh. B 2:8-18.) The Immigration Judge asked for certain admissions from Defendant: that he is not a U.S. citizen, that he is a citizen of Mexico, that his parents are not U.S. citizens, that he had been admitted as an LPR, and that he had been "convicted of grand theft and sentenced to three years." (Id. 2:19-3:4.) The Immigration judge then ordered the Defendant removed and deported "based on [his] admissions" and stated that no relief seemed to be available. (Id. 3:13-14.)

Defendant argues that his admissions in the hearing do not add up to sufficient proof of an aggravated felony because the Notice to Appear cites a non-existent statute (there is no § 487(D) in the California Health and Safety Code), and because grand theft, the crime of which he admitted he was convicted, is not categorically an aggravated felony.

The court need not address the issue of whether the Immigration Judge was presented with sufficient evidence to find that Defendant had been convicted of an aggravated felony. Even if there were not sufficient evidence of Defendant's conviction before the Immigration Judge, Defendant was in fact convicted of grand theft auto. Under a recent Ninth Circuit ruling, "an alien who is statutorily barred from obtaining relief from removal cannot be prejudiced by an IJ's failure to inform him about the possibility of applying for such relief. This remains true even if the government does not introduce noticeable documentation of the alien's aggravated felony conviction before the IJ." U.S. v.

6

Bustos-Ochoa, WL 6579556, *3 (9th Cir., Dec. 18, 2012)(per curiam). Because the court finds that Defendant was convicted of an aggravated felony (see below), he was not eligible for relief in the form of cancellation of removal or voluntary departure.[2] Thus, even if the Immigration Judge did not have sufficient evidence to find that Defendant had been convicted for an aggravated felony, under Ninth Circuit precedent, Defendant suffered no prejudice when he was not informed of such relief under the circumstances.

**2. Whether Grand Theft Auto Is an Aggravated Felony**

Determining whether a conviction is an aggravated felony under the INA requires a two-step inquiry:

> The first step is the application of the categorical approach. We compare the statute of conviction to the list of aggravated felonies in 8 U.S.C. § 1101(a)(43). If the statute of conviction required proof of all the elements of one of the federal generic offenses on that list, then the conviction was for an aggravated felony. If not, we apply the modified categorical approach. The modified categorical approach allows us to look beyond the statute of conviction to determine whether the facts proven at trial or admitted by the defendant as part of his guilty plea establish that the defendant was convicted of all the elements of the relevant federal generic offense.

Sanchez-Avalos v. Holder, 693 F.3d 1011, 1014-15 (9th Cir. 2012)(citations omitted). See also Taylor v. United States, 495 U.S. 575, 602 (1990).

---

[2] Even with a conviction for an aggravated felony, he may still be eligible for a hardship waiver under 212(h), as discussed below.

7

**a. Whether Section 487(d) Is Categorically an Aggravated Felony**

"[A]n offense is an aggravated felony if and only if the full range of conduct covered by the criminal statute falls within the meaning of that term." Martinez-Perez v. Gonzales, 417 F.3d 1022, 1026 (9th Cir. 2005)(overruled on other grounds)(internal quotation marks and citations omitted). If the criminal statute allows a conviction for a broader range of conduct than in the generic definition, the modified categorical approach is to be used. The issue is therefore whether the California statute for grand theft auto encompasses a broader range of conduct than the federal generic definition. If so, a modified categorical approach must be used.

Under Ninth Circuit law, "the generic definition of 'theft offense,' as it is used under 8 U.S.C. § 1101(a)(43)(G), is 'a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.'" Martinez-Perez v. Gonzales, 417 F.3d 1022, 1026 (9th Cir. 2005)(overruled on other grounds), quoting United States v. Corona-Sanchez, 291 F.3d 1201, 1205 (9th Cir. 2002)(en banc). The elements of this generic definition are "(1) the intent to deprive the owner of rights and benefits of ownership, and (2) the taking of property . . . ." Martinez-Perez v. Gonzales, 417 F.3d 1022, 1026 (9th Cir. 2005)(overruled on other grounds).

At the time of Defendant's removal proceedings, the California Penal Code defined grand theft as

theft committed in any of the following cases:

. . . .

        (D) When the property taken is an automobile, firearm, horse,
            mare, gelding, any bovine animal, any caprine animal, mule,
            jack, jenny, sheep, lamb, hog, sow, boar, gilt, barrow, or
            pig.

Cal. Penal Code § 487(d)(1998). The court must decide whether the full range of conduct covered by this section falls within the meaning of the generic definition of theft offense in the INA.

It is settled law that the whole of § 487 requires intent. "California case law has interpreted § 487 as '[n]ecessarily requir[ing] a finding that the accused intended to steal.'" Martinez-Perez v. Gonzales, 417 F.3d 1022, 1026 (9th Cir. 2005)(overruled on other grounds), quoting People v. Jaramillo, 16 Cal.3d 752 (1976)(en banc). The first element of the generic offense is therefore met.

The next question is whether Section 487(d) requires "a taking of property or an exercise of control over property," the second element of the generic definition. The Ninth Circuit held that a conviction under California Penal Code § 484(a)[3] was not categorically an aggravated felony under the INA because it includes the deprivation of labor and therefore "allows a conviction for theft when a person has neither taken, nor exercised control over, property." Corona-Sanchez, 291 F.3d at 1208. Penal

---

[3]"Every person who shall . . . knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft. Cal. Penal Code § 484.

Code § 487(a) likewise prohibits the theft of labor and would not constitute an aggravated felony.[4]

In contrast, the Ninth Circuit held that § 487(c), which provides that grand theft is committed "when the property is taken from the person of another," does fall within the generic definition of theft offense because, like the generic definition, it requires "a taking of property or an exercise of control over property." Martinez-Perez v. Gonzales, 417 F.3d 1022, 1027 (9th Cir. 2005).

Like § 487(c), § 487(d) does not include labor or other intangibles. It lists specific types of property (automobiles and certain animals) which, when taken, constitute grand theft. Thus, all conduct falling under this section would also fall within the generic definition of theft under the INA as "a taking of property or an exercise of control over property."

The court finds that § 487(d) falls within the generic definition of the theft offense under the INA. Thus violations of § 487(d), including grand theft auto, are categorically aggravated felonies.

Having found that violations of § 487(d) are categorically aggravated felonies are encompassed by the generic definition of theft, the court finds that grand theft auto is categorically an aggravated felony.

///
///

---

[4] "Grand theft is theft . . . [w]hen the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950)." Cal. Penal Code § 487(a).

### b. Modified categorical approach

Because the court has found that grand theft auto is categorically an aggravated felony, it need not address Defendant's arguments that would be relevant to the modified categorical approach.

## 2. Eligibility for Relief

Having determined that Defendant was convicted of an aggravated felony, the court now considers whether he was eligible for any relief.

### a. Cancellation of Removal and Voluntary Departure

Under 8 U.S.C. § 1229b(a)(3), the removal of a deportable alien may be cancelled if, among other criteria, the alien has not been convicted of any aggravated felony. Likewise, an alien who has committed an aggravated felony is ineligible for voluntary departure. 8 U.S.C. § 1129c(a)(1). Because the court has found that Defendant was convicted of an aggravated felony, it also finds that he would not have been eligible for either of these types of relief.

### b. 212(h) Waiver

#### 1. Effect of an Aggravated Felony

Under 8 U.S.C. § 1182(h), certain aliens may qualify for relief from deportation, known as a waiver of inadmissibility or § 212(h) relief. Most relevant here, an LPR may receive such relief if he can demonstrate that "extreme hardship" would result to a United States citizen or lawfully resident immediate relative. 8 U.S.C. § 1182(h)(1)(B). Such relief cannot be granted "in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . .

11

since the date of such admission the alien has been convicted of an aggravated felony."  8 U.S.C. § 1182(h).

Defendant argues that this exclusion does not apply to him because he was never "admitted to the United States as an alien lawfully admitted for permanent residence" within the meaning of the statute.  "Congress has . . . provid[ed] the following definition [of "admitted"]: 'The terms "admission" and "admitted" mean, with respect to an alien, the <u>lawful entry</u> of the alien into the United States <u>after inspection and authorization</u> by an immigration officer.'  8 U.S.C. § 1101(a)(13)(A).  Under this statutory definition, 'admission' is the lawful <u>entry</u> of an alien after inspection, something quite different, obviously, from post-entry adjustment of status . . ." Martinez v. Mukasey, 519 F.3d 532, 544 (5th Cir. 2008).  "[F]or the § 212(h) bar to apply: when the alien is granted permission, after inspection, to enter the United States, he must then be admitted as an LPR." Id.  The Fifth Circuit explained that "defining 'admitted,' as used in § 212(h), to <u>exclude</u> adjustment to LPR status subsequent to entry . . . is bolstered by the 'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.'  This canon of construction, comparable to the rule of lenity in criminal cases, is based on the drastic nature of removal." Id., citing Cardoza-Fonseca, 480 U.S. 421, 449 (1987). This court agrees with the Fifth Circuit's interpretation and finds that the § 212(h) bar does not apply when a person adjusts to LPR status subsequent to entry.[5]

---

[5]As the Government acknowledges, while the Ninth Circuit has
(continued...)

12

Here, Defendant entered the United States without inspection and later obtained status as an LPR. Because he entered without inspection, he was not "admitted" in the meaning of the statute. Furthermore, he was not admitted as an LPR, but adjusted his status after being present in the country. For these reasons, the court agrees with Defendant that the bar on § 212(h) relief does not apply to him despite his conviction for aggravated felony.

### 2. § 212(h) Requirements

The government asserts that even if Defendant is not barred from adjustment of status by his aggravated felony, he was ineligible for § 212(h) relief because he did not apply concurrently for adjustment of status and could not have received such adjustment because no visa was immediately available. The government also argues that Defendant did not demonstrate the extreme hardship required to qualify for relief under § 212(h).

"In order to obtain a § 212(h) waiver, the alien must demonstrate that his deportation would cause 'extreme hardship' to a 'spouse, parent or child' who is a citizen or lawful permanent resident." U.S. v. Arrieta, 224 F.3d 1076, 1079-80 (9th Cir. 2000). Because the court finds (as discussed below) that Defendant has not presented evidence sufficient to meet the standard for extreme hardship, it need not address the question, not yet resolved in this Circuit, of whether an LPR present in the United

---

[5](...continued)
not addressed the precise issue posed by this case, it held that "the plain meaning of the term 'admission' in § 1101(a)(13)(A), and thus the term 'previously been admitted' in § 212(h), refers to a procedurally regular admission and not a substantively lawful admission." Hing Sum v. Holder, 602 F.3d 1092, 1096 (9th Cir. 2010).

13

States must file an application for adjustment of status concurrently with an application for 212(h) relief in order to be eligible for such relief.[6]

To show "extreme hardship," a person seeking § 212(h) relief must demonstrate "great actual or prospective injury or extreme impact on the citizen family member, beyond the common results of deportation." United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998)(internal quotation marks and citation omitted). "Economic hardship caused by the deportation of a family's primary bread-winner, combined with the difficulties of relocating, do not, standing alone, constitute the extreme hardship necessary to justify relief." United States v. Arrieta, 224 F.3d 1076, 1082 ldren(9th Cir. 2000).

Defendant's mother Rosa M. Pulido submitted a declaration stating that it was an extraordinary hardship upon her for Cesar to be deported. (Declaration of Rosa M. Pulido ¶ 16.) She indicates that he "provided much needed financial support" to his children and that she herself would not have managed without him. ( Id. ¶¶

---

[6] Courts of Appeal in three Circuits and the Board of Immigration Appeals have held that an application for adjustment of status is required in order to obtain relief under such circumstances. See In Re Emeka Kenneth Abosi, 24 I. & N. Dec. 204, 207 (BIA 2007), Poveda v. U.S. Attorney General, 692 F.3d 1168, 1176 (11th Cir. 2012), Cabral v. Holder, 632 F.3d 886 (5th Cir. 2011), Klementanovsky v. Gonzales, 501 F.3d 788 (7th Cir. 2007). But see Poveda v. U.S. Attorney General, 692 F.3d at 1181 (dissent), finding this interpretation arbitrary ("The upshot is that, under BIA precedent, whether an alien who is subject to deportation is eligible for a waiver under section 212(h) largely hinges on whether he has traveled abroad after his conviction. Specifically, an alien who cannot otherwise seek an adjustment of status - but who has made a trip overseas - is eligible for the waiver. In contrast, an alien who cannot otherwise seek an adjustment of status- and who has not traveled abroad- is not eligible for relief.").

14

11, 13.) In addition to the financial support, she states that when he was deported they lost his economic support but also his "love, support, and guidance, and his time with us as well." (Id. ¶ 16.) She stated further that he used to take his younger sister to school and would do handyman chores around the house. (Id. ¶ 17.)

"The existence of family ties in the United States is the most important factor in determining hardship." United States v. Arrieta, 224 F.3d 1076, 1082 (9th Cir. 2000). The "essential emotional and other non-economic familial support" can be the basis for demonstrating hardship to family members. Id. Based exclusively on his mother's declaration, which is the only evidence before it, the court cannot find that Defendant's mother or children demonstrate extreme hardship. Rosa Pulido describes some assistance that Defendant provided to her, such as help at the swap meet, help with household chores, and help walking his sister to school, but she does not indicate why her three other adult children were not able to help her or why Defendant's help was so critical. She states that the family lacked Defendant's love, support, guidance, and time; while the court does not doubt her sincerity, the claim is too general to demonstrate extreme hardship. In cases where extreme hardship has been demonstrated, more specific and detailed evidence is typically provided. In Arrieta, the defendant presented an affidavit

> documenting the critical role Mr. Arietta played in raising
> his younger siblings. Mr. Arrieta's mother was in very poor
> health, and she was raising two citizen children. His mother
> documented the essential assistance Mr. Arrieta provided in

15

helping to raise those children, especially when she was medically unable to do so. She also documented the severe sense of personal loss she felt when Mr. Arrieta was deported. Id. The court does not doubt the loss felt by Defendant's family when he was deported, but the record as it stands before the court on this motion does not demonstrate that this loss resulted in extreme hardship.

Because Defendant has not offered sufficient evidence to show that he would have qualified for relief under § 212(h), the court finds that the Immigration Judge did not err in failing to inform him of possible relief. Because Defendant offers no other grounds to invalidate his waiver of his right to appeal, that waiver appeals to be valid and he is therefore barred from collaterally attacking his underlying removal order. See United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004)("An alien is barred under 8 U.S.C. § 1326(d) from collaterally attacking his underlying removal order as a defense to § 1326 charges 'if he validly waived the right to appeal that order during the deportation proceedings.'").

**B. Deprivation of Judicial Review and Unfairness of Entry of Removal Order**

Because Defendant has not met the first requirement to succeed on a collateral attack on his removal order, that attack must fail. The court notes that even if it considered the other two requirements – deprivation of judicial review and unfairness of entry of removal order - Defendant would not meet those requirements for the same reasons. Because Defendant did not qualify for any relief, the Immigration Judge did not fail to

16

inform him of possible avenues of relief, and therefore Defendant was not deprived of the opportunity for judicial review nor was the entry of the removal order fundamentally unfair.

**IV. CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: January 16, 2013

DEAN D. PREGERSON
United States District Judge