O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 12-00032 DDP |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF RULING ON MOTION TO DISMISS INDICTMENT** |
| v. | ) | |
| | ) | [Dkt. No. 45 ] |
| CESAR PULIDO-ESTRADA, | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the court is Defendant Cesar Pulido-Estrada's Motion for Reconsideration of Ruling on Motion to Dismiss Indictment. Having considered the parties' submissions and heard oral argument, the court adopts the following order.

**I. BACKGROUND**

Defendant is a native and citizen of Mexico. (Mot., Exh. B at 2.) According to his application for Legal Permanent Resident ("LPR") status, Defendant entered the United States without a visa on January 7, 1977. (Opp., Exh. 4.) At that time, he was around four years old. (Opp., Exh. 4 (indicating that he was born in 1972). See also Mot. at 19 n.11.) He was granted LPR status on

April 19, 1989. (Mot., Exh. A.) On March 12, 1997, Defendant was arraigned for the crimes of grand theft auto in violation of California Penal Code Section 487(D), unlawful driving or taking of a vehicle in violation of California Vehicle Code Section 10851(a), and dissuading a witness by force or threat in violation of California Penal Code Section 136.1(c)(1). (Mot., Exh. D.) On May 14, 1997, Defendant was convicted by plea of all three counts. (Mot., Exhs. E and F.)

On June 25, 1997, the U.S. Immigration and Naturalization Service ("INS") issued a Notice to Appear which alleged that Defendant was an LPR who had been convicted "for the offense of Grand Theft Auto, in violation of Section 487(D) of the California Health and Safety Code" and for that offense was sentenced to confinement for three years. (Mot., Exh. A.) The Notice charged Defendant as removable for having been "convicted of an aggravated felony as defined in section 101(a)(43) of the Act." (Id.)

On April 23, 1999, a hearing was conducted before an Immigration Judge ("IJ"). (Mot., Exh. B.[1]) Defendant was asked if he understood his right to be represented by counsel and responded "Yes." (Id. 1:13-14.) When asked if he had counsel and if he wished for additional time to obtain counsel, Defendant responded "No." (Id. 1:15-18.) He also responded affirmatively when asked if he understood and had received written notice of his right to

---

[1] The government presented Defendant with what purports to be a true and correct audio recording of this hearing. Defendant prepared a transcript of the audio recording. (Mot. at 5, Exh. B.) The government compared the transcript to the audio recording and has deemed it to be accurate. (Opp. at 3 n.2.)

2

appeal. (Id. 1:23-26.) The IJ then asked Defendant if he understood the charges against him.

>     IJ: The charge in your case is you should be deported from the United States because at any time after admission, you've been convicted of an aggravated felony. An aggravated felony includes a theft offense for which the sentence is one year or more. Do you understand that charge?
>     D: Yes.
>     IJ: And the government says that they handed the charge to you on April 20. Did the government hand you a copy of the charge on April 20?
>     D: Yes.
>     IJ: And do you want to discuss your case today or a different date?
>     D: Today.
>     IJ: The government alleges that you are not a citizen or a national of the United States. They say you are a native or a citizen of Mexico. They adjusted your status to that of a permanent resident on April 19, 1989. They say that on May 14, 1997, you were convicted in Los Angeles of grand theft and sentenced for that offense to three years. Do you understand those allegations?
>     D: Yes.
>     IJ: Are you a citizen or a national of the United States?
>     D: No.
>     IJ: Are you a native and citizen of Mexico?
>     D: Yes.
>     IJ: Are either of your parents U.S. citizens?
>     D: No.
>     IJ: Were you admitted to the United States as a permanent resident on April 19, 1989?
>     D: Right.
>     Unidentified Voice: I'm sorry?
>     D: Correct.
>     IJ: Okay. And on May 14,1997, were you convicted of grand theft and sentenced to three years?
>     D: Yes.
>     IJ: If you were to be deported, to what country?
>     D: Mexico.
>     IJ: Will anybody try to hurt you in Mexico?
>     D: No.
>     IJ: Is there anything else you wish to present about your case?
>     D: Umm, no.
>     IJ: Nothing?
>     D: Nothing. Nothing.
>     IJ: Based on your admissions, I'm going to order you removed and deported to Mexico. I don't see any reliefs [sic] available. Do you accept the deportation or do you wish to appeal?
>     D: I'm accepting it.
>     IJ: Thank you sir.

```
 D:   That's it?
IJ:   That's it.
```
(Mot., Exh. B. 2:3-3:19.)

The same day, Defendant was removed to Mexico. (Mot., Exh. C.)

The government asserts that Defendant returned to the United States at least twice after his deportation, on September 15, 2003, and on June 19, 2006. (Opp., Exhs. 1 and 2.)

The Grand Jury charges that Defendant was found in San Bernardino County on November 30, 2011, in violation of 8 U.S.C. § 1326(a) and (b)(1).

On October 23, 2012, Defendant filed a Motion to Dismiss Indictment based on the invalidity of his prior deportation. The Motion was heard on January 7, 2013, and on January 16, 2013, this court denied that Motion.

## II. LEGAL STANDARD

A motion for reconsideration is properly granted on a showing that (1) newly discovered evidence demands a contrary result; (2) the court committed clear error or its decision was manifestly unjust; or (3) there has been an intervening change in controlling law. Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003). In addition, Local Rule 7-18 provides that:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new

1 || material facts or a change of law occurring after the time of
2 || such decision, or (c) a manifest showing of a failure to
3 || consider material facts presented to the Court before such
4 || decision. No motion for reconsideration shall in any manner
5 || repeat any oral or written argument made in support of or in
6 || opposition to the original motion.
7 C.D. Cal. L.R. 7-18.

**III. DISCUSSION**

**A. Propriety of Reconsideration**

Defendant argues (1) that substitution of counsel at a late date before the hearing on the Motion to Dismiss constitutes a "material difference in fact" because substituted counsel could not have known through reasonably diligence of the new declarations and records (Mot. at 7); (2) that the court committed clear error in framing its inquiry as whether Defendant "<u>would</u> have qualified for relief under § 212(h)" (Order at 16 (emphasis added)) instead of using the more appropriate inquiry as to whether the defendant has produced evidence "that makes it <u>plausible</u> that he would have received" a § 212(h) waiver, <u>U.S. v. Arrieta</u>, 83 (9th Cir. 2000)(emphasis added); and (3) that even if the technical requirements of Local Rule 7-18 are not met, it is "in the interests of justice and judicial economy" to consider Defendants newly presented evidence, <u>United States v. Quintanilla</u>, 2011 WL 4502668, *5 (N.D. Cal. Sep. 28, 2011).

The court finds that substitution of counsel does not constitute a material difference in fact. Holding to the contrary would allow for motions for reconsideration whenever counsel change and would result in a loss of judicial economy. The court also

finds that while Defendant is correct that the cited phrasing of the § 212(h) inquiry as it appears in the Order is not precisely the standard, Defendant does not assert, nor does the court find, that in its application of the standard the court wrongly required that Defendant produce evidence guaranteeing that he would have obtained § 212(h) relief. The court found, rather, that Rosa Pulido's declaration of hardship was "too general" to establish extreme hardship, and that it fell short of the evidence of hardship presented in cases where extreme hardship was found. (Order at 15.)

Nonetheless, the court agrees with Defendant that it is in the interests of justice and judicial economy to consider the new declarations submitted with this motion. "All rulings of a trial court are subject to revision at any time before the entry of judgment." United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986)(quoting Fed. R. Civ. P. 54(b))(internal quotation marks omitted). The court therefore finds it appropriate at this time to reconsider Defendant's Motion and the additional declarations he provided.

**B. Collateral Challenge**

A defendant "can succeed in [a] collateral challenge [to deportation proceedings] only if he is able to demonstrate that: (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Arrieta, 224 F.3d 1076 (9th Cir. 2000).

**1. Due Process Violation**

Where "the record raised an inference that the petitioner had a relative who was a U.S. citizen[2] . . . [,] that inference should have raised the possibility of relief in the IJ's mind." Bui v. I.N.S., 76 F.3d 268, 271 (1996). The record contained indications that Defendant was an immediate relative of a U.S. citizen or LPR, insofar as it indicated that he entered the country unlawfully at age four and subsequently obtained LPR status. This leads to the inference that one or more of his parents was an LPR. Because the IJ did not inform Defendant of his potential eligibility for relief under § 212(h), there was a procedural defect in the underlying deportation proceedings.

### 2. Prejudice

In addition to establishing a due process violation, Defendant must also demonstrate that he was prejudiced by the defect. He "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." United States v. Arrieta, 224 F.3d at 1079. The court now considers whether Defendant had a plausible ground for relief from deportation in the form of § 212(h) relief.

### a. Extreme Hardship

To obtain § 212(h) relief, a person must demonstrate "extreme hardship," defined as "great actual or prospective injury or extreme impact on the citizen family member, beyond the common results of deportation." United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998)(internal quotation marks and citation

---

[2] Section 212(h) also applies to relatives of lawful permanent residents. 8 U.S.C. § 1182(h)(1)(B).

7

omitted). "Economic hardship caused by the deportation of a family's primary bread-winner, combined with the difficulties of relocating, do not, standing alone, constitute the extreme hardship necessary to justify relief." United States v. Arrieta, 224 F.3d at 1082.

In the Order of January 16, 2013 (the "Order"), this court found that Defendant was not subject to the absolute bar to § 212(h) relief for aggravated felons because Defendant had not technically been "'admitted to the United States as an alien lawfully admitted for permanent residence' within the meaning of the statute." (Order at 24 & n.5.) Nonetheless, the court found that Defendant did not present evidence of extreme hardship that would make him eligible for § 212(h) relief.

Defendant now offers new declarations from his mother, sister, and himself regarding his role in their lives and the lives of his children and his sister's children. Mrs. Pulido explains that in 1991, just before her husband's death, she was diagnosed with diabetes. (Rosa Pulido Decl. ¶ 2.) In 1993, while working at the Modern Faucet factor, she fell, injured her knee, and had surgery as a result. (Id. ¶ 3.) She received workers' compensation as a result of that injury. (Id.) She depended on Defendant to take her to the pharmacy and to physical therapy and medical appointments. (Id. ¶¶ 2, 4.) Defendant would also take her to purchase merchandise that she would sell at the swap meet and to the swap meet each weekend. (Id. ¶¶ 5-6.) Mrs. Pulido's daughter Sandra was living in an apartment behind Mrs. Pulido's residence, but she was working and going to school and was therefore unable to

help Mrs. Pulido or take care of the children. (Id. ¶ 11.) See also Decl. Sandra Pulido ¶¶ 3-7.)

Mrs. Pulido also states that Defendant would take care of his children Cesar Jr., Stephanie Natalie, and Jesus. (Id. ¶ 7.) Cesar lived with Mrs. Pulido full-time, and the other two children lived with her for part of the week. (Id.)

According to Mrs. Pulido, Defendant's arrest caused her economic hardship because she lost the income from the swap meet. (Id. ¶ 9.) She had to become the full-time caretaker for Cesar Jr. and part-time caretaker for Jesus and Stephanie Natalie. (Id.) She reports that Cesar Jr.'s grades dropped and he was sad all the time after Defendant's arrest. (Id.) She also indicates that without Defendant, in order to get to her physical therapy appointments she had to walk to the bus stop, and walking was physically painful to her. (Id. ¶ 10.)

Defendant also submits a declaration indicating that he was the sole provider for Cesar Jr. (Decl. Cesar Pulido-Estrada ¶ 3.) He provides medical records indicating that his youngest son Jesus was later diagnosed with schizophrenia and bipolar disorder, and that as a young child he needed more attention from his father. (Id. ¶ 5.)

The court finds that Defendant had a plausible ground for relief under § 212(h). In United States v. Arrieta, 224 F.3d 1076, the court found extreme hardship when separation from the defendant would deprive his family of "essential emotional and other non-economic familial support" and "disrupt family unity." Id. at 1082. The evidence provided here shows that Defendant assisted his

disabled mother and his children in significant non-economic ways, and that at least one of his children had special needs.

The Government does not dispute that the new declarations establish extreme hardship.

Defendant need only show that he had a "plausible ground" for relief, not prove that he would have been awarded relief, United States v. Jimenez-Marmolejo, 104 F.3d 1083 (9th Cir. 1996). The court finds that he has done so.

### b. Concurrent Adjustment of Status

The Government asserts that even if Defendant has made a showing of extreme hardship such that he would plausibly have been eligible for relief under § 212(h), he did not file a concurrent application for adjustment of status, nor was he eligible to adjust his status, so there was no resulting prejudice from the IJ's failure to inform him of his possible eligibility for relief. The Government provided evidence that no visa was immediately available to Defendant. (Decl. Charles W. Oppenheim, ¶ 6 ("[A]n individual seeking adjustment of status in April 1999 in the Mexico F2B category would only have been eligible for final processing if a petition to accord such immigrant status had been filed on their behalf prior to July 22, 1991.").) Without an immediately available visa, Defendant would not have been able to adjust his status. 8 U.S.C. § 1255(a)(status may be adjusted if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.")

Defendant responds that the court is required to look to the law at the time of his 1999 deportation hearing. United States v. Lopez-Velasquez, 629 F.3d 894, 900-01 (9th Cir. 2010). Under that law, Defendant argues, he could plausibly have applied for a § 212(h) waiver without concurrently applying for adjustment of status, or what he calls a "stand-alone" § 212(h) waiver.

Under § 212(h), in relevant part, an immigrant may obtain a waiver of inadmissibility if (1) the immigrant is the spouse, parent, son, or daughter of a U.S. citizen or legal permanent resident ("LPR") and establishes that his or her "denial of admission would result in extreme hardship" to the U.S. citizen or LPR, and (2) the Attorney General has consented to the immigrant's "applying or reapplying for a visa, for admission to the United States, or adjustment of status." 8 U.S.C. § 1182(h). Section 212(h) is "silent as to whether an alien within our borders may obtain a hardship waiver without concurrently applying for an adjustment of status." Poveda v. U.S. Atty. Gen., 692 F.3d 1168, 1176 (11th Cir. 2012). The court therefore looks to interpretations by the Board of Immigration Appeals ("the Board") and the courts.

In Matter of Sanchez, 17 I & N. Dec. 218, 219 (BIA 1980), Sanchez entered the United States as a lawful permanent resident in 1965. He resided in the United States until 1970, at which time he moved back to Mexico and was designated as a commuter. He maintained commuter status from 1970 to 1976, entering the country each day to work, and returning to Mexico in the evening. In 1976, he and his family began residing in the Untied States. That year, after a brief visit to Mexico, Sanchez was arrested at the San

Ysidro border and charged with mail fraud. He was taken into custody, detained, and released pending trial. He pleaded guilty, received a suspended sentence, and was placed into deportation hearings and found to be deportable.

The IJ held, in relevant part, that Sanchez was not eligible for § 212(h) relief because § 212(h) relief is granted to cure a ground of inadmissibility at the time of entry. Sanchez was not inadmissible at the time of his original entry as a lawful permanent resident; he became excludable long after his entry as an immigrant. Id. at 222. The Board disagreed with the IJ on this point, holding that Sanchez may have been eligible for a § 212(h) waiver even though he was in deportation proceedings. "Aliens who become inadmissible after an original lawful entry may later be excluded from the United States if they depart and seek to reenter, and they may also at such later date be eligible for various waivers of excludability. Hence, the fact that the respondent was not inadmissible at the time of his original entry does not bar him from seeking 212(h) relief." Id. at 222-23. The Board held that Sanchez was not required to apply for adjustment of status to be eligible for the § 212(h) waiver.

Like Sanchez, Defendant became inadmissible subsequent to his initial entry. Unlike Sanchez, Defendant did not leave the United States and reenter after committing a felony. Under current law, at least in certain circuits, Sanchez would be eligible for a § 212(h) waiver and Defendant would not. See, e.g., Poveda v. U.S. Atty. Gen., 692 F.3d 1168, 1176 (11th Cir. 2012)(internal citations and quotation marks omitted)("The new interpretation by the Board of section 212(h)—that an alien within the United States must apply

12

for an adjustment of his status to receive a hardship waiver—is reasonable. Although section 212(h) permits the Attorney General to waive certain grounds of inadmissibility, not grounds of deportability, an alien within the United States who applies for an adjustment of status is assimilated to the position of an alien outside the United States seeking entry as an immigrant because an alien may adjust his status only if he is admissible.")

Defendant argues that under the law at the time of his deportation hearing, it was unconstitutional to require him to obtain an adjustment of status in order to be eligible for § 212(h) while allowing a similarly situated defendant, such as Sanchez, to obtain § 212(h) relief when the sole difference between them was that one had departed the country and reentered and the other had remained in the United States. In 1995, the Eleventh Circuit held that this distinction was unconstitutional. In Yeung v. Immigration and Naturalization Service, 76 F.3d 337, 338 (1995), the defendant Po entered the United States as an immigrant in 1988 and pleaded guilty to attempted manslaughter with a knife. Id. He was found deportable. Id. During the hearing, he sought to apply for a § 212(h) waiver on the ground of extreme hardship to his lawful permanent resident wife and U.S. citizen child. Id. The IJ found Po ineligible to apply for a § 212(h) waiver, and the Board agreed that "because Po (1) could not file for an adjustment of status, and (2) had not demonstrated that he had departed and returned to the United States since his 1993 conviction for attempted manslaughter, he was ineligible for a § 212(h) waiver." Id.

The Eleventh Circuit disagreed. It compared Po's case to Matter of Sanchez, and held that the distinction between the two cases violated equal protection:

> In practical effect, the Board has applied § 212(h) so as to create two classifications of aliens identical in every respect but for the fact that members of one of the classifications departed and returned to this country at some point after they became deportable. According to the Board, those who have so departed and returned are worthy of consideration by the Attorney General for exclusion waivers. Those whose fate has not led them to sojourn are due no such consideration.

Yeung v. Immigration and Naturalization Service, 76 F.3d 337, 341 (11th Cir. 1995). That court analogized Po's case to Francis v. INS, 532 F.2d 268, 340-41 (2d Cir. 1976), which similarly found an equal protection violation in providing § 212(c) relief to immigrants who temporarily left the country but not to those who remained.

Defendant argues that taken together, these cases provide a plausible basis for him to claim that he would be eligible for § 212(h) relief without a concurrent application for adjustment of status. He bolsters this argument by pointing out that although there were no Ninth Circuit cases at the time holding that a concurrent application for adjustment of status was not required, United States v. Arrieta, 224 F.3d 1076, the leading case on § 212(h) relief, concerned a defendant with facts similar to

14

Defendant's and made no mention of such a requirement.[3] He also points out that recent circuit court decisions discuss a change in interpretation by the Board on this point. See, e.g., Poveda v. U.S. Atty. Gen., 692 F.3d at 1176.

Although Arrieta's lack of reference to adjustment of status is puzzling, other Ninth Circuit cases around 1999 did require concurrent adjustment of status. In Bui v. I.N.S., 76 F.3d 268, 270-71 (9th Cir. 1996), the court states the law as follows:

> Section 212(h) contains requirements for a waiver of excludability when an alien applies for an adjustment of status under 8 U.S.C. § 1255(a)("section 245"). Aliens subject to deportation proceedings may apply for relief under sections 245 and 212(h). Section 245 would allow Bui an adjustment of status if he applied, obtained a waiver of admissibility under section 212(h), and had an immediately available visa. 8 U.S.C. § 1255(a).

In Bui, a direct appeal of deportation order, the Circuit remanded the case back to the IJ for a new deportation hearing because Bui was not informed of his eligibility for § 212(h) relief, noting

---

[3] Arrieta had entered the United States at age nine and was convicted of attempted forcible rape and sentenced to serve one year in jail. Id. at 1078. Upon his release he was placed into deportation proceedings in 1997 and was not informed of his eligibility to apply for a § 212(h) waiver. Id. at 1078-79. Arrieta was deported, reentered the country in 1998, and was indicted for reentry after deportation. He moved to dismiss the indictment, claiming that the IJ's failure to inform him of the possibility of § 212(h) relief violated his right to due process. Id. at 1078. The district court denied the motion and the Ninth Circuit reversed, holding that Arrieta's due process rights were violated by the IJ's failure to inform him of the possibility of § 212(h) relief and that he was prejudiced because it was plausible that he would have received such relief based on evidence that his LPR mother and U.S. citizen daughter would suffer extreme hardship due to his deportation. Id. at 1082.

15

that "[i]n the end, Bui may not prevail under sections 245 and 212(h) because of the unavailability of an immigrant visa." Id. at 271.

Similarly, in United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998), the Circuit stated: "Under § 245, Arce-Hernandez could have sought an adjustment of his immigration status if he applied for the adjustment, obtained a waiver of excludability, and had an immediately available visa." The district court in that case found that Arce-Hernandez "lacked plausible grounds for relief from deportation at the time of his deportation hearing in September 1996," noting "that even if a visa had been immediately available to Arce-Hernandez, which was not the case, he could not plausibly claim that his repatriation would result in extreme hardship to his U.S. citizen wife and children." Id. The district court in Arce-Hernandez did not base its decision on the lack of availability of a visa, focusing instead on the lack of extreme hardship. Nonetheless, both the circuit and the district court appear to agree that the law requires that Defendant qualify for both the § 212(h) waiver and adjustment of status.

These two cases from the time period of Defendant's deportation hearing are consistent with a Board decision from 1968 holding that "[t]he benefits of section 212(h) are not available in deportation proceedings unless granted in conjunction with adjustment of status under section 245 or under section 249." In re Bernabella, 13 I. & N. Dec. 42, 43-44 (BIA 1968). See also United States v. Moriel-Luna, 585 F.3d 1191, 1198-99 (9th Cir. 2009)(holding that there was prejudice when a defendant was not informed at his 1995 deportation hearing that he was eligible for §

16

212(h) relief because he would have needed to adjust his status and no visa was immediately available to him). Matter of Sanchez makes clear that the Board did not deem the Bernabella holding to be absolute, since it found that § 212(h) relief was available without concurrent adjustment of status in deportation proceedings under certain circumstances. 17 I & N. Dec. 218. Nonetheless, there is no clear Ninth Circuit case law suggesting a departure from this requirement.

Defendant makes a credible argument that the requirement of concurrent adjustment of status violates equal protection, but he has not pointed to any law of the Ninth Circuit that makes this conclusion so ineluctable as to provide Defendant with a plausible ground for relief from deportation.[4]

### c. Continuance of Deportation Proceedings

Alternatively, Defendant argues that he was prejudiced because if he had been informed that he was eligible for § 212(h) relief but that he needed to apply concurrently for adjustment of status, he could have requested a continuance of deportation proceedings from the IJ. "The decision to grant or deny a continuance is in the sound discretion of the judge and will not be overturned except on a showing of clear abuse." Sandoval-Luna v. Mukasey, 526 F.3d 1243, 1247 (9th Cir. 2008). To determine whether the denial of a continuance was an abuse of discretion, the Ninth Circuit looks to the following factors: "(1) the nature of the evidence excluded as a result of the denial of the continuance, (2) the reasonableness

---

[4] Contrast the instant case with United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1050 (9th Cir. 2004), where the defendant had a "plausible legal challenge" when the Ninth Circuit had already rejected the argument presented by the Government.

17

of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted." Ahmed v. Holder, 569 F.3d 1009, 1012 (9th Cir. 2009)(holding that it was an abuse of discretion for an IJ to deny an immigrant's request for a second continuance pending appeal of visa denial to Administrative Appeals Office).

Some courts have held that when a visa is not immediately available, an IJ's denial of a continuance is not an abuse of discretion. See Sandoval-Luna v. Mukasey, 526 F.3d at 1247 (where a dependant's application for status under his father's labor certification application had not been approved at the time of the hearing and no relief was then immediately available, there was no abuse of discretion in denying a second continuance), Castillo-Torres v. Holder, 394 Fed. Appx. 517, 522 (10th Cir. 2010)("Because Ms. Castillo-Torres did not have an immediately available visa, we conclude that the IJ did not abuse his discretion in denying a continuance based on his estimate that it would be approximately three years before the immigrant visa became available."), and Chacku v. U.S. Att'y Gen., 555 F.3d 1281, 2186 (11th Cir. 2008).

Here, the issue is whether it was plausible that Defendant would have been granted a continuance by the IJ to allow him to apply for adjustment of status when no visa was immediately available. While it is possible that the IJ might have granted him a continuance in order to apply for adjustment of status, Defendant has not shown that a discretionary continuance was plausible, since no visa was immediately available to him, and the wait time for the visa in his category was approximately eight years. (Decl. Oppenheim ¶ 6.) Although Defendant might possibly have received a

18

visa more quickly, he has not presented any evidence supporting such a claim.

**IV. CONCLUSION**

For these reasons, the court DENIES Defendant's Motion for Reconsideration of Ruling on the Motion to Dismiss Indictment.

Dated: April 11, 2013

_____
DEAN D. PREGERSON
United States District Judge